## KELLY *v.* PORTER and others.[1]

*(Circuit Court, D. California.* February 5, 1883.)

1. LICENSE PENDING APPLICATION FOR PATENT—MODIFIED CLAIMS.

An inventor filed in the patent-office his specifications, claims, and application for a patent. He then entered into a contract with other parties, describing his invention, setting forth therein that he had filed his specifications and application for a patent, and granting " the exclusive right and privilege of manufacturing and selling the aforesaid goods *under any patent that he might obtain by or through his application aforesaid,*" in a large tract of territory described. Afterwards, upon the requirement of the commissioner, the claims appended to the specifications were modified, and in accordance with such modified claims the patent issued. *Held,* that the license covered the patent issued upon the claims as modified.

2. LICENSE, WHEN IRREVOCABLE.

A license to use a patent given pending the application for its issue, unlimited as to time, and providing, only, that it should be void on failure to obtain the patent, wherein the licensor covenants to protect the licensee " against any and all persons, during the term of the application for a patent, as aforesaid, and *after he shall have obtained a patent* from the United States government, as aforesaid," is irrevocable by the licensor, without the consent of the licensee.

3. LICENSEE NOT AN INFRINGER.

A party manufacturing and selling a patented article, in pursuance of the terms of a licensee from the patentee, cannot be held liable as an infringer.

4. LICENSEE ONLY LIABLE FOR ROYALTY.

The only remedy of a patentee against a party manufacturing under a license is upon the contract granting the license for the royalty agreed upon.

5. JURISDICTION—LICENSE.

An action by the patentee against his licensee, for the stipulated royalty, presents no question of patent law, and no subject-matter, which can give the national courts jurisdiction on that ground.

[1] From 8th Sawyer.

The contract construed is as follows:

"Whereas, Mr. P. Kelly, of the city and county of San Francisco, and state of California, has applied for and is now endeavoring to obtain from the United States government a patent on or for the inserting of an elastic behind the ankle of short-legged bootees or gaiter boots, of which said Kelly claims to be the originator and inventor, together with all his style and cut, as in his plans and specifications accompanying said application set forth; and whereas, Porter, Oppenheimer, Slessinger & Co., of the city, county, and state aforesaid, are desirous of manufacturing and selling men's, youths', and boys' goods, and inserting an elastic behind the ankle, as aforesaid, therefore the said P. Kelly hereby covenants and agrees to give and grant to the said Porter, Oppenheimer, Slessinger & Co. the exclusive right and privilege of manufacturing and selling the aforesaid goods under any patent he may obtain by or through his applications as aforesaid, in the state and territories of California, Oregon, Nevada, Montana, and Colorado, Idaho, Washington, and Utah; but the said Kelly hereby reserves the right to manufacture said goods for retail purposes in his own store. And the said Porter, Oppenheimer, Slessinger & Co. hereby covenant and agree to pay to the said P. Kelly the sum of three dollars per dozen (of twelve pairs) as royalty for the privilege of manufacturing and selling said goods, as aforesaid, for all other kinds of goods made and sold by them as aforesaid. But it is hereby agreed that no royalty shall be paid to said P. Kelly for any goods manufactured by Porter, Oppenheimer, Slessinger & Co. for the said P. Kelly. And it is further agreed that any goods made and sold as aforesaid by Porter, Oppenheimer, Slessinger & Co. shall be sold by them on the conditions that the party purchasing the same shall not sell such goods at retail in the city and county of San Francisco, except by the said P. Kelly. And the said P. Kelly further covenants and agrees that for and in consideration of the royalty paid to him as aforesaid, that he, the said Kelly, will protect the said Porter, Oppenheimer, Slessinger & Co. in the rights hereby granted, as aforesaid, against any and all persons during the term of the application for a patent as aforesaid, and after he shall have obtained a patent from the United States government as aforesaid. And it is further agreed by and between the parties hereto that if the said P. Kelly from any cause fails to obtain a patent as aforesaid, or does not protect said Porter, Oppenheimer, Slessinger & Co. in the manufacturing and selling said goods as aforesaid, then, and in that event, the said Porter, Oppenheimer, Slessinger & Co. shall not pay unto the said P. Kelly any sum or royalty for the privilege hereby granted. And if the claims by Kelly for a patent are rejected by the United States government, Porter, Oppenheimer, Slessinger & Co. shall not pay unto the said Kelly any royalty from and after the date of the rejection of his claims for a patent as aforesaid. And in the event the said P. Kelly's claims for a patent, as aforesaid, are rejected by the United States government, then this agreement shall cease and become null and void. And it is further agreed, by and between the parties hereto, that if the said P. Kelly obtains a patent as aforesaid, then, and in that event, the royalty of one dollar and fifty cents, to be paid as aforesaid, may be changed in any manner that the parties hereto may agree upon.

"PORTER, OPPENHEIMER, SLESSINGER & CO.    [Seal.]
"P. KELLY.                                [Seal.]

"Signed, sealed, and delivered in presence of    JOHN HEIN.
"San Francisco, March 8, 1879."

*Wheaton & Harpham*, for complainant.
*Boone & Miller*, for defendants.

Sawyer, J., (*orally.*) This is a demurrer to a bill in equity to enjoin the infringement of a patent. The bill was originally filed without setting out a contract, which existed between the parties; and defendants by plea set it up as a defense. The complainant then amended his bill, and set out the contract. The defendants rely upon this contract, claiming that it is a license, and that the alleged infringement of the complainant's patent is merely manufacturing and selling the patented articles under and by authority of that license.

The complainant insists under the bill, as now drawn, that it appears that the patent, as issued, is not covered by the license, because there was a change made in the *claims* of the original application for the patent, so that they differ in the patent issued from the claims as they existed in the application, when the specifications were first filed, and at the date when this contract was entered into. The commissioner of patents refused to grant the patent on the claims as first made, and they were, therefore, modified, and the patent was finally issued on the modified claims, based upon the original application and specifications.

The complainant's counsel insist, in the first place, that the license does not extend to the patent as issued. But I think he is mistaken in that proposition. In the license the invention is described, and the facts set forth that the inventor has made his application for a patent, and filed his specifications; and the license is then granted, "with the exclusive right and privilege of manufacturing and selling the aforesaid goods *under any patent* that he [the inventor] *may obtain by or through his application as aforesaid,* in the states and territories of California, Oregon, Nevada, Montana, Colorado, Idaho, Washington, and Utah." The only change made in the application was in respect to the claims, which change was made pursuant to the decision of the commissioner that the invention was not properly covered by the claims, as originally drawn. The patent was then issued upon the original application, as thus amended, for the invention described, and comes plainly within the terms of the contract licensing the defendants to manufacture and sell goods "under *any* patent that he may obtain *by or through his application.*"

I think, therefore, that the right of respondents to manufacture and sell the goods described is established by the license. But, in case he should find himself mistaken in regard to this first proposition, complainant next alleges in his bill that he has revoked the license; that he has served upon the defendants a written revocation of it; and claims, therefore, that the license has ceased to be operative. Here the question arises as to whether or not the complainant is authorized to make such a revocation. There is nothing in the license which authorizes the revocation, or limits the time that the license is to remain in force. It contains this clause: "And the said P. Kelly further covenants and agrees that for and in consideration of the royalty paid to him as aforesaid, he, the said Kelly, will pro-

tect the said Porter, Oppenheimer, Slessinger & Co. in the rights hereby granted, as aforesaid, against any and all persons *during the term of the application for a patent,* as aforesaid, and *after he shall have obtained a patent from the United States government, as aforesaid.*" There is nowhere in the contract any limitation as to time, and no right of revocation reserved in terms. The only other clause that can affect the question is: "In the event the said P. Kelly's claims for a patent, as aforesaid, are rejected by the United States government, then this agreement shall cease, and become null and void." Thus it is provided in express terms under what circumstances the contract shall be abrogated; and, having named those terms, it must be presumed that they cover all the contingencies contemplated by the parties upon which the contract should cease.

The defendants agree to pay the royalty for all the goods they manufacture, embracing the invention even *before* the patent issued, when it was not certain that a patent would ever issue, or that they would ever be under any obligation to pay a royalty; and, undoubtedly, securing the right to continue to manufacture after the patent should issue, was an important part of the consideration in the view of the defendants, while receiving the royalty for the goods manufactured before the patent issued was, doubtless, deemed of no little importance by the parties applying for a patent. It may have been, and doubtless was, a very important consideration in the view of both parties. The great extent of territory covered by the license, as stated, was important and valuable, in case the patent should issue, and it is provided that the defendants are to be protected, not only during the pendency of the application for the patent, but also after the patent should issue, showing that the parties did not contemplate any revocation as soon as the patent should be obtained. The complainant ought not to be permitted to avail himself of the consideration valuable to himself, and then, as soon as the patent issued and became valuable, repudiate that part which is valuable to the licensee.

I think that the license runs for the entire term of the patent, and I do not think the complainant has a right to revoke it, there being no stipulation to that effect within the contract. And such, I think, is the proper construction, upon a consideration of the entire contract. I find no case, however, in which this question has been directly decided, but there are analogies favoring the view adopted. It seems to me that it would be a very one-sided contract—in fact, equivalent to no contract at all—if the complainant could, on the very next day, or as soon as the patent issued, revoke it.

I think, therefore, that this license is irrevocable, unless by some fault of the parties, or by their mutual consent. Being irrevocable, the license is still in existence, and the defendants are manufacturing under that license, and are, therefore, not liable as infringers.

The defendants do not dispute the validity of the patent, and do not deny that they have manufactured goods of the character de-

scribed in the patent. It is simply a question, then, of a cause of action arising upon the license. The only thing that can be recovered from the defendants is the royalty agreed upon for the quantity of boots and shoes manufactured by them, containing the complainant's patented improvements. Being simply a suit on the license,—on the contract between the parties,—there is no question here arising under the patent law, and there is no jurisdiction in this court to entertain such a suit on the ground of subject-matter, and no other ground of jurisdiction is shown. There is no jurisdictional fact, such as might arise from the character of the parties, to bring the case within the jurisdiction of this court. *Tilghman* v. *Hartell*, 2 Ban. & A. 260.

The demurrer must be sustained and the bill dismissed; and it is so ordered.